Matthew Thomas CLARKE, Appellant,

v.

The STATE of Texas, State.

No. 2–89–290–CR.

Court of Appeals of Texas,
Fort Worth.

July 16, 1991.

Rehearing Overruled Aug. 20, 1991.

John D. Nation, Dallas, for appellant.

Bruce Isaacks, Crim. Dist. Atty., and Jim E. Crouch, Asst., Denton, for appellee.

Before WEAVER, C.J., and LATTIMORE and MEYERS, JJ.

OPINION

MEYERS, Justice.

Appellant, Matthew Thomas Clarke, was convicted by a jury of the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. § 22.021 (Vernon 1989). The jury assessed punishment at ninety-nine years in prison and a $10,000 fine.

We affirm.

Appellant brings the following six points of error on appeal of his conviction alleging that the trial court erred in admitting: (1) DNA–PCR forensic evidence in violation of the standard established in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923); (2) evidence of DNA–DQ alpha typing, even as judged under the "relevance" standard of TEX.R.CRIM.EVID. 702; (3) evidence of State's exhibit number 40, State's exhibit number 52, and State's exhibits numbers 29–31, as well as all evidence derived from appellant's arrest as said arrest was illegal; (4) State's exhibits numbers 43 and 44, evidence which could not be connected to appellant; (5) State's exhibits numbers 2, 41, 42, 76, 80, and 106, inasmuch as such evidence was obtained through an unlawful search of appellant's residence; and (6) the complainant's in-court identification of appellant, because this identification was tainted by an impermissibly suggestive pretrial identification procedure.

Appellant's conviction arose from an aggravated sexual assault he perpetrated against D.K.L. on the night of May 23, 1987. Appellant pushed open the door of D.K.L.'s apartment, pointed a knife at D.K.L., and ordered her to be quiet. Appellant tied D.K.L.'s hands with a cord and blindfolded her with duct tape before he began sexually assaulting D.K.L. at knifepoint over a six-hour period.

On May 27, 1987, D.K.L. was waiting to see an investigator at the Denton Police Department when she saw appellant walk by and identified appellant as the man who sexually assaulted her. D.K.L. also picked appellant's picture from a photographic array, selected his voice in a voice lineup, and identified appellant at trial.

After a pretrial hearing, the trial court permitted the State to present evidence obtained through DQ alpha DNA testing. Appellant's first two points of error complain of the admission of this evidence on the grounds that such evidence was inadmissible under both the *Frye* and relevancy standards.

■ With regard to appellant's contention that the relevancy standard is inconsistent with the test for admissibility of scientific evidence set out by *Frye*, 293 F. at 1014 when determining the admissibility of evidence based upon DNA testing, we wholly disagree with appellant and turn for guidance to this court's opinion in *Kelly v. State*, 792 S.W.2d 579 (Tex.App.—Fort Worth 1990, pet. granted). Here, as in *Kelly*, we focus upon the "relevancy" standard which we find is consistent with *Frye* and exists in TEX.R.CRIM.EVID. 401, 402, and 702. *Kelly*, 792 S.W.2d at 584. Under the relevancy standard, expert testimony based upon novel scientific evidence is admissible if it is relevant and its probative value outweighs such dangers as the potential to mislead the jury. TEX.R.CRIM.EVID. 401, 403, and 702; *Kelly*, 792 S.W.2d at 584. Expert testimony is admissible, in general, if the witness is qualified as an expert, the testimony will assist the jury and the probative value of the testimony is not outweighed by its prejudicial effect. *See* TEX.R.CRIM.EVID. 401, 403, and 702; *Pierce v. State*, 777 S.W.2d 399, 414–15 (Tex.Crim. App.1989).

■ In the instant case, a series of DNA tests were performed on blood samples, and a vaginal swab taken from D.K.L. along with saliva taken from appellant. The State presented expert testimony from an academic biologist, a forensic serologist, and a professor of medical genetics to support the reliability of such evidence. This testimony established the validity of the underlying scientific principles involved and that the technique was properly used for testing in the instant case. Because we find that the relevancy standard was the proper standard to be applied in this case and that the evidence produced in the instant case concerning DNA testing was reliable, appellant's first two points of error are overruled.

Appellant's third point of error states that the trial court erred in admitting evidence of: State's exhibit number 40, State's exhibit number 52, and State's exhibits numbers 29–31, as well as all evidence derived from appellant's arrest as said arrest was illegal.

As appellant reminds us, the arrest in this case is the same arrest which was litigated in a previous appeal on defendant's behalf. *See Clarke v. State,* 785 S.W.2d 860 (Tex.App.—Fort Worth 1990), *aff'd, Clarke v. State,* 811 S.W.2d 99 (Tex. Crim.App., 1991) (not designated for publication) (issuance of mandate stayed until July 28, 1991). Here, as in our previous opinion, we hold that the investigative detention conducted in the instant case was legal, as was the resulting arrest. *Id.* at 868–69. Although a further suppression hearing was held in the instant case, the facts are still identical to those we considered in relation to this issue on appellant's previous appeal. The facts of this arrest being the same, our reasons for upholding the legality of the temporary investigative detention and eventual arrest are the same and we deem it unnecessary to address the merits of this argument once again. Appellant contends that the admission of exhibits of which he complains was error because appellant's detention and arrest were illegal. Since we find that the detention and arrest were legal, admission of these exhibits did not constitute error on this basis. *See id.* Appellant's third point of error is overruled.

Appellant argues in his fourth point of error that the trial court erred in admitting State's exhibits numbers 43 and 44, because such evidence could not be connected to the appellant.

■ State's exhibits numbers 43 and 44 are a knife and toboggan cap which were found underneath a car in the area appellant ran to when he was approached by a police officer. Both the knife and cap were identified by D.K.L. as having been used by appellant during appellant's assault of D.K.L. Further, a scabbard which fit State's exhibit number 44 was found during a consensual search of appellant's house; however, a knife fitting the scabbard was missing from appellant's house.

This evidence is sufficient to connect appellant with State's exhibits 43 and 44. Appellant's contention that the probative value of this evidence is outweighed by its prejudicial value, causing these exhibits to be inadmissible under TEX.R.CRIM.EVID. 403, lacks merit. Appellant's fourth point of error is overruled.

Appellant's fifth point of error asserts that the trial court erred in admitting State's exhibits numbers 2, 41, 42, 76, 80, and 106 because such evidence was obtained through an illegal search of appellant's residence.

The search of which appellant now complains was voluntarily consented to by appellant after appellant spoke with an attorney. Appellant now argues that said consultation, having occurred over the telephone while appellant was in the presence of two policemen, was insufficient representation because it was not a private consultation. Appellant further contends that his technical entitlement to counsel was not an issue and that quality of consultation was a factor determining the voluntariness of appellant's consent.

■ The question of whether such consent was given freely and voluntarily is to be answered by looking at the totality of the circumstances surrounding the consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219–27, 93 S.Ct. 2041, 2043–48, 36 L.Ed.2d 854 (1973); *Fancher v. State,* 659 S.W.2d 836, 839 (Tex.Crim.App.1983). When the State seeks to rely upon consent to justify the lawfulness of a warrantless search, it has the burden of proving by clear and convincing evidence that the consent was given freely and voluntarily. *Fancher,* 659 S.W.2d at 839.

In the present case, appellant was in custody at the time he signed the consent to search form. When appellant was originally stopped for questioning, he was read his *Miranda* warnings and waived these rights specifying that he understood all his rights, in particular the right to counsel. When appellant was arrested for burglary, he again was advised of his rights and waived them. Appellant never requested an attorney before he was taken to the jail. Even while appellant was at the jail, he did not request an attorney and even refused a phone call. Once at the police station, appellant was again advised of his *Miranda* rights. He understood those warnings and

never requested an attorney. No coercion was used; the waiver was voluntary.

The only time at which appellant requested an attorney was for the limited purpose of talking about the consent to search. He told Officer Cummings, "Before he signed the consent to search, he wanted to talk to his attorney." Immediately, appellant was given the opportunity to speak with his attorney, Tom Whitlock.

Whitlock spoke with the appellant for five to ten minutes; he was representing appellant at that time. The conversation between attorney and client only concerned whether or not appellant should consent to allow the Denton Police Department to search his residence. Whitlock testified that appellant's only concern was his computer. Whitlock spoke with Officer Cummings after speaking with appellant, and Cummings assured Whitlock that the computer would not be touched if the search was allowed. Whitlock understood that appellant wanted to agree to the search, and Whitlock advised Cummings to go forward with the search. Appellant was advised of the warnings contained on the consent to search form, signed the form, and then the search was conducted.

■ During the conversation, Whitlock was aware that appellant was not free to go and that officers were with him. Whitlock asked questions which would only require a "yes" or "no" answer. Whitlock did not feel that the conversation was rushed or that appellant was being told what to say. The conversation was free and open, and appellant was not restricted in any way in what he was saying.

Cummings testified that appellant was allowed to talk as long as he pleased and that no coercion was used; appellant signed the consent form freely and voluntarily. After appellant signed the consent to search form, he never requested the use of an attorney again.

This evidence is sufficient to show that appellant's consent to the search in question was freely and voluntarily given. *See Fancher,* 659 S.W.2d at 839. The search being legal, the trial court did not err in admitting the items complained of under

this point of error. Appellant's fifth point of error is overruled.

Appellant's final point of error states that the trial court erred in admitting D.K.L.'s in-court identification of appellant because this identification was tainted by an impermissibly suggestive pretrial identification procedure.

■ In determining whether an in-court identification should be excluded because of the pretrial identification procedure, the following factors should be considered: (1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any prelineup identification and the defendant's actual description; (3) any identification of another person prior to the lineup; (4) the identification by picture of the defendant prior to the lineup; (5) failure to identify the defendant on prior occasions; (6) the lapse of time between the alleged act and the lineup identification. *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim.App. [Panel Op.] 1978); *Thompson v. State,* 480 S.W.2d 624, 627 (Tex.Crim.App. 1972).

In the instant case when appellant entered D.K.L.'s apartment he stood only a few feet away from her for three to four minutes before D.K.L.'s eyes were covered and D.K.L. testified she got a good look at him. Appellant was in D.K.L.'s apartment for six hours and spoke to D.K.L. throughout the assault. D.K.L. identified appellant on sight, without prompting, at the police department. D.K.L. also identified appellant as her assailant from both voice and photographic lineups. D.K.L. did not identify another person prior to lineup and D.K.L. identified appellant on sight approximately four days after the offense occurred.

■ Appellant contends that D.K.L.'s knowledge that police had a suspect tainted D.K.L.'s identification of appellant. However, this alone does not create a tainted identification. *See Clay v. State,* 518 S.W.2d 550, 554 (Tex.Crim.App.1975). Thus, we do not find that D.K.L.'s in-court identification was tainted by an impermissi-

bly suggestive pretrial procedure. Appellant's sixth point of error is overruled.

We affirm.