**Henry Lee BETHUNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–90–00970–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 5, 1991.

Discretionary Review Granted
Jan. 8, 1992.

Tommy Sanchez, Moses M. Sanchez, Houston, Juan Martinez Gonzales, Beeville, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

**J. CURTISS BROWN, Chief Justice.**

Appellant entered a plea of not guilty before the jury to the offense of aggravated sexual assault. *See generally* TEX.PENAL CODE ANN. § 22.021 (Vernon 1989). Appellant was convicted and the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life and a fine of $10,000. In twelve points of error, appellant complains of the sufficiency of the evidence, prosecutorial misconduct, the trial court's charges to the jury, unnecessarily suggestive pretrial identifications, the admission of DNA testing evidence, and the limitation of his voir dire examination. We affirm.

On January 16, 1988, the complainant was beaten and sexually assaulted in her home. During the course of the assault, the attacker held a knife to the complainant's throat and threatened to kill her. The complainant, who was seventy four years old at the time of the attack, was able to observe her attacker for a period of about two hours. The complainant was sexually assaulted orally, anally and vaginally. The complainant identified the appellant from a police photo spread. After appellant's arrest, the complainant identified the appellant in a police lineup. A DNA analysis was performed on a semen specimen the attacker left on the complainant's mattress. The analysis produced an identical match with DNA obtained from appellant's blood. At trial, the complainant positively identified the appellant as her attacker.

Appellant's first and fifth points of error assert that the trial court erred in admitting the DNA analysis evidence at trial. Relying upon *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), appellant filed a pretrial motion to suppress the DNA fingerprint evidence on the ground that the evidence was the product of a novel and unreliable scientific test which has not gained general acceptance in the scientific community. During trial, a *Frye* hearing was held outside the presence of the jury regarding the admissibility of the DNA fin-

gerprint evidence. At the conclusion of that hearing, the trial court ruled that the DNA fingerprint evidence was admissible under both the *Frye* standard and the relevancy standard.

Appellant urges this court to adopt the *Frye* standard and hold that the DNA fingerprint evidence should have been suppressed since it has not gained general acceptance in the scientific community. Under the *Frye* standard, expert testimony based upon a novel scientific technique is admissible only if the underlying scientific principle has gained general acceptance in the particular field in which it belongs. 293 F. at 1014. Appellant relies upon *Zani v. State*, 758 S.W.2d 233 (Tex.Crim.App. 1988), in support of his contention. In *Zani*, the Court announced that the *Frye* test was applicable to determine the admissibility of hypnotically induced testimony. *Id.* at 241. However, *Zani* was a pre-Rules case and the Court did not address the issue of whether the *Frye* standard is applicable to post-Rules cases. Consequently, *Zani* should not be construed as holding that Texas presently adheres to the *Frye* standard. *Kelly v. State*, 792 S.W.2d 579, 585 (Tex.App.—Fort Worth 1990, pet. granted). Nevertheless, DNA fingerprinting evidence has been found to be admissible in Texas under the *Frye* standard. *See Mandujano v. State*, 799 S.W.2d 318, 321–22 (Tex.App.—Houston [1st Dist.] 1990, no pet.); *Glover v. State*, 787 S.W.2d 544, 547–48 (Tex.App.—Dallas 1990, pet. granted).

█ Relying upon *Kelly v. State*, the State urges this court to instead adopt the relevancy standard. Under the relevancy standard, expert testimony based upon novel scientific evidence is admissible if it is relevant and its probative value outweighs such dangers as the potential of the evidence to mislead the jury. *See* TEX.R.CRIM. EVID. 401, 403 and 702; *Kelly*, 792 S.W.2d at 584. Although the *Kelly* court found the *Frye* standard to be consistent with the relevancy standard, it is the relevancy standard which must be applied in cases tried after the effective date of the Texas Rules of Criminal Evidence. *See Kelly*, 792 S.W.2d at 585. We agree. Although we

find the DNA fingerprinting evidence to be admissible under either standard in the present case, we hold that the relevancy standard is the proper test to apply in post-Rules cases.

█ In general, expert testimony is admissible if the witness is qualified as an expert, the testimony will assist the jury, and the probative value of the testimony is not substantially outweighed by its prejudicial effect. *See* TEX.R.CRIM.EVID. 401, 403 and 702; *Kelly*, 792 S.W.2d at 584; *Pierce v. State*, 777 S.W.2d 399, 414–15 (Tex.Crim. App.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990). The trial court's decision to admit the evidence will not be overturned on appeal absent an abuse of discretion. *Kelly*, 792 S.W.2d at 585.

At the *Frye* hearing, Dr. C. Thomas Caskey testified for the State. Dr. Caskey, a board certified internist and molecular geneticist, is chairman of the Institute for Molecular Genetics at Baylor College of Medicine in Houston. Dr. Caskey specializes in DNA research and has never been affiliated with Lifecodes Corporation, the laboratory which did the DNA fingerprint analysis in the present case. Dr. Caskey testified that DNA fingerprinting is a very reliable forensic test. In fact, Dr. Caskey stated that there is no possibility of a false positive DNA match because any technical error in the procedures or degradation of the forensic sample will only lead to no result at all. In Dr. Caskey's opinion, forensic DNA fingerprinting enjoys widespread acceptance in the scientific community.

Dr. Caskey further testified that he has reviewed Lifecodes' procedures, internal control systems and operations, and that he found them quite impressive. Dr. Caskey also stated that he has reviewed manuscripts written by Lifecodes' employees that have appeared in peer group review journals, and that he has found no flaws in their articles or technology. Dr. Caskey testified that Lifecodes' procedures and quality controls enjoy general acceptance in the scientific community. Moreover, Dr. Caskey reviewed Lifecodes' testing in the

present case. Dr. Caskey found that Lifecodes followed their procedures, performed the correct calculations, and reached the correct conclusions.

Appellant did not produce any expert testimony at the *Frye* hearing challenging the principles, procedures or technology of forensic DNA testing generally, nor did he produce any expert testimony challenging the particular test performed in this case. In denying appellant's motion to suppress, the trial court found that DNA fingerprinting in general, as well as the procedures employed by Lifecodes in the present case, enjoy general acceptance in the scientific community, and that the probative value and reliability of the evidence outweighs any prejudicial effect. Based upon the record before us, we find that the DNA evidence is undeniably relevant and that the probative value of the evidence outweighs any prejudicial effect.[1] *See Clarke v. State*, 813 S.W.2d 654 (Tex.App.—Fort Worth, 1991, no pet.); *Vickers v. State*, 801 S.W.2d 214, 216 (Tex.App.—Beaumont 1990, no pet.); *Kelly*, 792 S.W.2d at 585. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's *Frye* motion and admitting the DNA evidence at trial. Furthermore, once the State introduced the DNA evidence at trial, appellant cross-examined the State's expert witnesses, produced his own expert testimony attacking the reliability of the statistical evidence, and attacked the DNA evidence in his final arguments. Therefore, we find appellant's argument that the DNA evidence had an "exaggerated impact" on the jury to be without merit. Appellant's first and fifth points of error are overruled.

■ In his second and twelfth points of error, appellant asserts that the trial court erred in not charging the jury on the reliability of DNA testing and Lifecodes' procedures. Appellant requested a jury instruction which would require the jury to find, beyond a reasonable doubt, that DNA fingerprinting is reliable before they could consider the evidence. Appellant request-

ed an identical instruction regarding the reliability of Lifecodes' laboratory procedures. Appellant argues that the trial court's failure to submit the requested instructions resulted in a denial of his right to a fair trial. Appellant cites no Texas cases in support of this proposition. The contention is without merit.

There is no requirement that each individual piece of evidence be reliable beyond a reasonable doubt. It is the jury's sole responsibility to weigh the evidence and determine whether the State has proven each element of the offense beyond a reasonable doubt. In discharging that duty the jury will determine the reliability of the evidence and the weight it should be afforded. Of course, a defendant is entitled to attack the reliability of the State's evidence through cross-examination, expert testimony and final arguments, and appellant did so in the present case. However, appellant's requested instructions would single out a certain species of evidence and invite the jury to pay it particular attention. As such, the requested instructions would amount to an impermissible judicial comment upon the weight of the evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1991); *Zani v. State*, 758 S.W.2d 233, 245 (Tex.Crim.App.1988); *Buxton v. State*, 646 S.W.2d 445, 446 (Tex. Crim.App.1983). Here, the court's charge instructed the jury that they were the exclusive judges of the facts, the credibility of the witnesses and the weight to be given their testimony. That instruction adequately informed the jurors of their duty to determine the reliability of all of the evidence, without singling out any particular evidence. Appellant's requested instructions are improper and the trial court did not err in refusing to submit them to the jury. Appellant's second and twelfth points of error are overruled.

■ Appellant's third and fourth points of error assert that the prosecutor engaged in unethical misconduct by interfering with appellant's attorney client relationship and the work product of his counsel. The

---

1. Without question, the record supports the trial court's ruling under the *Frye* standard as well.

*See Mandujano*, 799 S.W.2d at 322; *Glover*, 787 S.W.2d at 548.

State's DNA analysis was performed by Lifecodes. Appellant was given the opportunity to have an independent DNA analysis performed by Cellmark. Shortly before the trial was to begin, appellant filed a motion for continuance on the ground that he had not yet received the results of that independent analysis. In arguing that motion, appellant mentioned that the prosecutor had contacted Cellmark and inquired as to when the results would be available. Without asking what the results would be, and without requesting a report for himself, the prosecutor merely asked that the results be sent to defense counsel and the court as quickly as possible due to the rapidly approaching trial date. On appeal, appellant argues that the prosecutor's misconduct warrants a dismissal of the case. Although we find appellant's arguments meritless, nothing is preserved for review. Appellant failed to make any request, objection or motion before the trial court which comports with his points of error on appeal. As such, the trial court was not given an opportunity to make a ruling on the alleged prosecutorial misconduct. Therefore, nothing is preserved for review. TEX.R.APP.P. 52(a); *e.g., Little v. State,* 758 S.W.2d 551, 563 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App.1986). Appellant's third and fourth points of error are overruled.

■ Appellant's sixth point of error asserts that the trial court erred in instructing the jury not to consider parole laws in assessing appellant's punishment. Relying upon *Rose v. State,* 752 S.W.2d 529 (Tex. Crim.App.1987), appellant argues that the trial court's instruction violates the separation of powers and due course of law provisions of the Texas Constitution by calling the jury's attention to the existence of parole laws. We disagree.

Initially we note that article 37.07, § 4, which was found unconstitutional in *Rose,* has been re-enacted under a constitutional grant of authority. *See* TEX. CONST. art. IV, § 11(a); TEX.CODE CRIM.PROC.ANN. art. 37.-07, § 4 (Vernon Supp.1991); *Johnson v.*

*State,* 800 S.W.2d 563, 567 (Tex.App.— Houston [14th Dist.] 1990, pet. ref'd). However, the present case was tried before the constitutional amendment and the resulting re-enactment of the statute which authorizes parole law instructions. Here, the trial court's charge on punishment instructed the jury that:

> You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and must not be considered by you.

Appellant did not object to the charge. Here, the jury was not instructed that it could consider good conduct time and parole, nor was the jury instructed as to how good conduct time might be awarded or forfeited. Thus, the evil perceived by the Court in *Rose* in directly instructing the jury that they could consider good conduct time and parole is not present in the instant case. *See Rose,* 752 S.W.2d at 535. Instead, the trial court explicitly instructed the jury that they were not to discuss or consider matters to which they have no concern. These were the trial court's only words on the subject. Consequently, we find no error in the trial court's charge to the jury on punishment. *See Janecka v. State,* 739 S.W.2d 813, 833 (Tex.Crim.App. 1987). Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant asserts that the evidence was insufficient to support his conviction. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine whether, viewing the evidence in a light most favorable to the verdict, a rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The appellate courts ensure only the rationality of the factfinder, serving as a final due process safeguard. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The jurors are the exclusive judges of the facts, the

credibility of the witnesses, and the weight given their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

 Appellant points to several discrepancies between the complainant's description of her attacker and other evidence. Appellant argues that these discrepancies create an "impossibility of appellant being the perpetrator of the crime." We have reviewed appellant's perceived discrepancies and find that they at best create minor conflicts in the evidence. The reconciliation of conflicts in the evidence is within the exclusive province of the jury. *E.g., Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986). Furthermore, the jury is entitled to accept one version of the facts and reject another or to accept or reject any part of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). We will not interfere with the jury's exclusive province where the record reflects that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

 The record reflects that the complainant picked the appellant's picture from a police photo array and identified the appellant in a police lineup. The complainant also positively identified the appellant at trial. Furthermore, the DNA tests indicated that the appellant was the perpetrator of the crime. Viewing the evidence in a light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that appellant was the perpetrator of the offense. Appellant's seventh point of error is overruled.

 Appellant's eighth point of error asserts that the trial court's charge to the jury on guilt or innocence shifted the burden of proof to appellant in violation of his due process rights. Specifically, appellant argues that the charge's definition of "intentionally" created a presumption that appellant acted intentionally. We find it difficult to take appellant's argument seriously.

The charge's definition of "intentionally" tracked the definition provided by the Penal Code. *See* Tex.Penal Code Ann. § 6.03(a) (Vernon 1974). Nothing in the language of that definition allocates any burden of proof on the culpable mental state. Furthermore, the court's charge explicitly instructed the jury that the burden of proof rests solely upon the State and never shifts to the defendant. Appellant's eighth point of error is without merit and overruled.

 In his ninth and tenth points of error, appellant complains that his conviction should be reversed because the complainant's in-court identification of him was the product of an impermissibly suggestive pretrial photographic spread and police lineup procedure. An in-court identification is always admissible unless it is shown by clear and convincing evidence that it was tainted by improper pretrial identification procedures. *Jackson v. State,* 628 S.W.2d 446, 448 (Tex.Crim.App. [Panel Op.] 1982); *Mullen v. State,* 722 S.W.2d 808, 814 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The in-court identification is inadmissible if the pretrial identification procedure is impermissibly suggestive and the suggestive procedure gives rise to a substantial likelihood of irreparable misidentification. *Rogers v. State,* 774 S.W.2d 247, 260 (Tex.Crim.App.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Cantu v. State,* 738 S.W.2d 249, 251 (Tex. Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987).

 Appellant's ninth point of error complains of the pretrial photographic array from which he was identified by the complainant. Appellant contends that the photo array was unnecessarily suggestive and created a substantial likelihood of misidentification, because he was the only subject with a particular shirt collar and the only subject wearing a shirt with a design and lettering. Appellant also complains that his photo was larger than the others, that it contained a larger portion of his body, and that it was the only photo with a background.

The record reveals that the complainant did not even notice several of the differences pointed out by appellant. The array consisted of photographs of six black men of similar age and build. In addition, all of the subjects were wearing casual shirts or athletic type T-shirts. The complainant testified that her selection of appellant's photograph was based solely upon her memory of him from the attack. Further, when cross-examined about what distinguished appellant's photograph from the others, the complainant responded that it was his eyes, his brow, his chin, and his haircut. Under these circumstances, we conclude that the photographic array was not impermissibly suggestive and did not create a substantial likelihood of misidentification.

Moreover, even if the photographic display was suggestive, the record clearly shows that the complainant's prior observation of the appellant was sufficient to serve as an independent basis for her in-court identification. The complainant had the opportunity to observe and talk to her attacker over a period of some two hours. The photographic array was presented to the complainant the day following the sexual assault. The complainant never identified anyone else as the perpetrator, nor did she fail to identify the appellant on a prior occasion. The complainant positively identified the appellant at trial. There was no evidence that would even suggest that the complainant's in-court identification of appellant was tainted by the pretrial photographic array. Based upon the record before us, the trial court did not err in admitting the in-court identification. *See, e.g., Turner v. State*, 614 S.W.2d 144, 146 (Tex. Crim.App. [Panel Op.] 1981). We overrule appellant's ninth point of error.

Appellant's tenth point of error complains of the pretrial lineup from which he was identified by the complainant. Appellant argues that the lineup was unnecessarily suggestive and created a substantial likelihood of misidentification, because he was taller than the other subjects, his jumpsuit was darker than the others, and because of his placement in the middle of the stage. We disagree.

Neither due process of law nor common sense requires that the features of the subjects in a pretrial lineup be identical. *See Buxton v. State*, 699 S.W.2d 212, 216 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). Where the subjects in a lineup appear to be reasonably similar to one another, variations in height, weight, clothing and other factors do not *per se* make the lineup impermissibly suggestive. *See id.* The record reveals that appellant was two inches taller than one subject and four inches taller than another. Further, all of the subjects were wearing faded pink jumpsuits. Appellant's jumpsuit was merely a little less faded than the others. The subjects were lined up in a row across the stage. As each number was called, the subjects would walk to the front of the stage and recite a phrase used by the perpetrator during the assault. All of the subjects were within the complainant's view during the entire procedure. We see nothing suggestive about appellant being stationed in the middle of the row. Under these circumstances, we find that the lineup was not impermissibly suggestive and did not create a substantial likelihood of misidentification. Moreover, as we have previously discussed, the record in this case clearly shows an independent basis for the complainant's in-court identification. *See, e.g., Turner*, 614 S.W.2d at 146. Based upon the record before us, we hold that the trial court did not err in admitting complainant's in-court identification of the appellant. Appellant's tenth point of error is overruled.

Appellant's eleventh point of error asserts that the trial court erred in restricting appellant's voir dire. During voir dire, appellant's counsel asked the venire: "Would you say that the identification of a person or an accused must be proven with reliability and with pretty much certainty to eliminate anybody else?" The State objected on the grounds that the question was a misstatement of the law and that it was a final argument type question. After the trial court sustained the State's objection, appellant's counsel continued his ques-

tioning of the venire on the possibilities of misidentification. Appellant argues on appeal that the trial court's restriction of his voir dire prevented an intelligent use of his peremptory challenges. We disagree.

The decision of the trial court to restrict voir dire may only be reviewed to determine whether the restriction constituted an abuse of discretion. *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App. 1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). The test for reviewing a trial court's restriction of voir dire turns on whether the question was proper. *Id.* Moreover, the defendant has the burden of showing that the question he sought to ask was proper. *Id.* However, there is no error in prohibiting duplicitous questions where further investigation is not entirely prevented. *Id.* at 167; *Smith v. State,* 513 S.W.2d 823, 827 (Tex.Crim. App.1974).

Here, appellant's counsel engaged in a lengthy discussion regarding identification, fading memories, fleeting glimpses, and the possibilities or likelihood of misidentification. Various pertinent questions were posed to the venire during the course of the examination. When the State's objection was sustained, appellant did not dispute the trial court's ruling; rather, appellant continued on the same theme until a prospective juror responded that: "Anybody can make a mistake." Appellant has made no showing, at trial or on appeal, that the question he sought to ask was proper. Furthermore, even if it can be said that the question was proper, it was duplicitous in light of the remainder of the voir dire examination. Thus, the restriction does not reflect an abuse of discretion on the part of the trial court. *See Allridge,* 762 S.W.2d at 164; *Smith,* 513 S.W.2d at 827. We overrule appellant's eleventh point of error.

The judgment of conviction is affirmed.