Kyle Steven WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. C14–91–01089–CR,
C14–91–01092–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 18, 1993.

Rehearing Denied April 15, 1993.

William W. Burge, Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

BOWERS, Justice.

Appellant entered a plea of not guilty before a jury to the offense of telephone harassment. He was convicted and the court assessed punishment at 90 days in jail and a fine of $500.00, both probated for six months.

Kim DiFrancesco testified that on January 30, 1991, she was working at a Whataburger restaurant on Highway 6. Shortly before 1:00 a.m., DiFrancesco received a telephone call from a man who said that four armed men were watching the store and that he wanted to give her instructions. The only other employee in the restaurant was Gloria Guzman. Two sheriff's deputies and four other customers were eating in the restaurant. DiFrancesco switched phones and notified Guzman of the call. Guzman, in turn, told the two sheriff's deputies about the call. The deputies told DiFrancesco to stay on the line and they would attempt to trace the call.

The caller began interrogating DiFrancesco about the number of customers in the store and the customers' sex, race, age and weight. DiFrancesco did not tell the caller about the two deputies. The caller told DiFrancesco to describe her clothing and then told her to undress. The caller then instructed DiFrancesco to tell Guzman get a broom. The caller then spoke to Guzman and instructed Guzman to put the broom in DiFrancesco's vagina and rectum. DiFrancesco and Guzman pretended to comply. After talking to Guzman, the caller talked to DiFrancesco again and told her that two men would enter the store, take their money, have sex with DiFrancesco and Guzman, and take pictures of them. The caller asked DiFrancesco if more customers were coming into the store. DiFrancesco explained that she could not see from the office, so she put the phone on the desk and went to the front of the store. The deputies told DiFrancesco they had traced the call and were going to pick up the caller. DiFrancesco hung up the phone. The call lasted 15 to 20 minutes.

About five to ten minutes later, DiFrancesco received a phone call from a police

officer. The officer asked DiFrancesco if she would recognize the caller's voice. When DiFrancesco responded "yes," the officer put someone on the phone. DiFrancesco listened to the person's voice and identified the person as being the caller.

Also, on January 30, 1991, Pam Davis was working at a Whataburger restaurant on F.M. 1960 in Harris County, Texas. Davis testified that on that night she answered the phone at approximately 1:23 a.m. The caller told Davis that two men were going to rob the store and shoot her if she did not cooperate. Roderick Williams (Roderick) was also working in the restaurant. The caller asked Davis how many customers were in the store. The caller told Davis to describe her underwear, and then interrogated her about her sex life and told her to undress. Davis pretended to comply. The caller instructed Davis to put Roderick on the phone. While Roderick was on the phone, Davis went to another phone and called her manager at home. Davis told the manager to call the police. The caller told Roderick to have sex with Davis and to hit her. Roderick gave Davis the phone, and the caller spoke to her for about five minutes asking her how it felt. The call ended abruptly when the caller hung up. The entire call lasted approximately 30 to 45 minutes. A deputy arrived and Davis and Roderick filed a complaint. The deputy returned about 10 minutes later and told Davis and Roderick someone had been caught. The deputy asked Davis to listen to a voice on the phone. She recognized the voice as that of the obscene caller.

In his first point of error, appellant argues the trial court erred by overruling his motion to suppress the voice identification testimony of DiFrancesco, Davis and Roderick. Appellant contends the identification testimony should have been suppressed because the pre-trial identification procedures were impermissibly suggestive.

Detective Dionne testified in a pre-trial hearing that he and Detective McLeod were eating at the Whataburger on Highway 6, and that while DiFrancesco was talking to the caller, the detectives traced the call to appellant's apartment. After they completed the trace, DiFrancesco hung up, and the two detectives drove to appellant's apartment, approximately four minutes from the Whataburger.

When the detectives arrived at appellant's apartment, Dionne knocked on the door, and appellant opened the door. Appellant had a cordless phone in his hand. Dionne gave appellant his *Miranda* rights and told appellant why the detectives were there. Appellant denied knowing anything about the calls. Appellant agreed to talk on the phone to DiFrancesco. After listening a few minutes, DiFrancesco identified appellant as the caller.

Jerry Cohn, a deputy sheriff, testified that at about 2:00 a.m. on January 30, 1991, he was dispatched to a Whataburger restaurant on FM 1960, where he spoke to Davis and Roderick. After speaking with the dispatcher, Cohn told Davis and Roderick that a suspect was in custody. Davis and Roderick each listened on the phone to the caller. The suspect recited the alphabet and counted. He did not say the same things that the caller had said in the harassing call. Davis identified the voice as that of the caller. Roderick was not present when Davis made her identification. Later, Roderick also identified the voice as the caller.

■ A victim's knowledge that the police have a suspect in custody does not in itself taint the victim's identification. *Clarke v. State*, 813 S.W.2d 654, 657, (Tex. App.—Fort Worth 1991), *aff'd*, 839 S.W.2d 92 (Tex.Crim.App.1992). The propriety of a pre-trial identification procedure depends upon the totality of the circumstances. The pre-trial procedure must be unnecessarily suggestive and conducive to irreparable mistaken identification before it is objectionable. *Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App.1982) (*op. on reh'g*). "[E]ven if the identification procedure is suggestive and unnecessary, the admission of the identification testimony does not violate due process as long as the identification possesses sufficient aspects of reliability." *Id.* at 513. Indicia of reliability include the witness' opportunity to

view (in this case, the opportunity to hear); the degree of attention; the accuracy of the description; the level of certainty; and the time between the crime and the confrontation. *Id.*

■ By listening to appellant's voice so soon after the commission of the offenses, the witnesses were allowed to test their recollection while their memories were fresh and accurate. A quick denial that appellant was the caller would have expedited his release. *See Garza,* 633 S.W.2d at 512.

The voice identifications were reliable. Each witness listened between 10 and 45 minutes to the caller's voice. The caller focused the witness' attention on his voice by making bizarre demands. Each telephone identification occurred shortly after the witnesses had received the offending calls, and all of the witnesses were certain of their identifications. There was no substantial likelihood of irreparable misidentification. We overrule appellant's first point of error.

■ In his second point of error, appellant argues the trial court erred by excluding expert psychological testimony by Dr. Jerome Brown.

Dr. Brown conducted a psychological profile of appellant. The purpose of the profile was to compare appellant's personality to the personality of an obscene caller who makes threats of bodily harm if the recipient of the call does not comply with the caller's demands.

Brown testified that people who commit these crimes typically have conflicts about aggression, are passive in the face of open conflict, have conflicts about their own sexuality, are hostile, and have a history of impaired relationships. Dr. Brown testified that appellant's personality is that of an overachiever. Appellant is rule-bound, concerned about the impression he makes on other people and is moralistic. Dr. Brown testified that appellant was not the type of person who would make obscene, threatening phone calls. Appellant argues that because the testimony was admissible

at the punishment stage, it should have been admissible at the guilt stage.

Rule 702 of the TEXAS RULES OF CRIMINAL EVIDENCE provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CRIM.EVID. 702. "The threshold determination for admitting expert testimony is whether the specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Duckett v. State,* 797 S.W.2d 906, 910 (Tex. Crim.App.1990) (quoting *Pierce v. State,* 777 S.W.2d 399 (Tex.Crim.App.1989)).

Appellant asserts that the primary issue was whether appellant, a young college student with no history of criminal or other anti-social behavior, had called the complaining witnesses and engaged in the bizarre behavior that they described. Appellant maintains that the psychologist's description of both the typical offender and appellant's personality characteristics would have assisted the jury in their determination of appellant's guilt or innocence.

■ The decision whether to allow a witness to testify as an expert is within the sound discretion of the trial court. *Duckett,* 797 S.W.2d at 910. Even if evidence is determined to be relevant, the court may exclude it if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." TEX.R.CRIM.EVID. 403.

This case is similar to *Dorsett v. State,* 761 S.W.2d 432 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), in which the trial court excluded testimony of a psychologist who had conducted a personality profile on appellant. In that case, appellant was charged with indecency with a child. The psychologist testified outside the presence of the jury that it was highly improbable that appellant was a child abuser. The court of appeals determined that the trial

court's exclusion of the testimony was not an abuse of discretion. *Id.* at 433.

Dr. Brown's testimony was simply that appellant was not the type of person who would place obscene and threatening phone calls. This kind of character judgment does not constitute highly specialized knowledge, but is the type of assessment that lay people make every day. The trial court did not abuse its discretion by excluding the testimony. We overrule appellant's second point of error.

In his third point of error, appellant complains that the trial court erred by excluding the testimony of Calvin Wheeler.

Mr. Wheeler is the step-father of appellant's mother. Mr. Wheeler testified that he has a cordless telephone and that the police were erroneously summoned to his home on three separate occasions when responding to 9–1–1 calls. The trial court excluded Wheeler's testimony as being irrelevant. Appellant asserts that this testimony supports his defensive theory that the telephone trace to his home was a mistake.

"Evidence which is not relevant is inadmissible." TEX.R.CRIM.EVID. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401.

Mr. Wheeler's testimony that the police were erroneously summoned to his house in response to calls to 9–1–1 does not make it more or less probable that appellant made obscene, threatening calls to two Whataburger restaurants. Evidence of the 9–1–1 tracing system has little probative value in determining if appellant committed telephone harassment. We overrule appellant's third point of error.

In his fourth point of error, appellant contends the evidence is insufficient to support his conviction. Appellant asserts that the identification testimony of DiFrancesco, Davis and Roderick should have been excluded. Appellant argues that absent this testimony, the only evidence was that of the phone trace to appellant's telephone. Appellant asserts that the trace evidence itself was questionable, and that the State failed to prove that another party could not have made the calls.

In reviewing the sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the verdict, and must determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim.App.1984).

We have determined, in appellant's first point of error, that the identification testimony of the three witnesses was properly admitted. Appellant cites no authority for his proposition that the State has a burden to prove that another party could not have made the calls. The call was traced to appellant. The witnesses identified appellant's voice as that of the caller. A rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty. We overrule appellant's fourth point of error.

Accordingly, we affirm the judgment of the trial court.