Affirmed and Memorandum Opinion filed June 25, 2009








Affirmed and Memorandum Opinion filed June 25, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00431-CR

NO. 14-08-00432-CR

_______________

 

SHELDON SMITH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause Nos. 1125773 &
1125774

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N








A jury
convicted appellant Sheldon Smith of aggravated robbery[1]
and bribery.[2]  The jury
sentenced him to fifteen years= confinement for the robbery conviction and two years= confinement for the bribery
conviction, but recommended community supervision for the latter sentence.  In
three issues,[3] appellant
contends that (a) an in-court identification by a witness was tainted by an
impermissibly suggestive pretrial identification procedure, (b) the trial
court erred in preventing him from asking a proper voir dire question, and (c)
the trial court improperly admitted statements he made while in custody.  We
affirm.

I.  Background

Appellant
has not challenged the sufficiency of the evidence; we therefore address the
facts briefly here and throughout the opinion as necessary to resolve this
appeal.

On the
morning of July 19, 2008, two gunmen with their faces partially concealed by
bandanas  entered a Cash America Pawn Shop in Houston.  As they entered the
shop, store manager Gonzalo Salazar activated a silent alarm.  Once inside, the
gunmen threatened Salazar, store employee Ariana Delbosque, and customer
Douglas Gana.  They then began taking cash, jewelry, and various other items
from the store.  After they had taken these items, one of the gunmen told the
other that the police had arrived.  








Houston
Police Department (AHPD@) officer Thomas Conner was dispatched to the pawn shop in
response to the silent alarm.  As he drove up to the store, Conner saw a black
male, whom he later identified as appellant, crouched inside the shop.  Conner
watched appellant walk out of the pawn shop with his hands in his pockets and
calmly cross the street.  When appellant walked into a ditch beside the street,
he slipped and fell.  After he fell, he pulled his hands out of his pockets to
push himself up, and Conner saw a large silver pistol in appellant=s hand.  Once Conner saw the gun, he
broadcast information about appellant over his radio to other officers who had
responded to the alarm.  Conner then watched appellant crawl through a hole in
a fence surrounding an apartment complex across the street from the pawn shop. 
After Conner saw appellant enter the apartment complex, he and other officers
set up a perimeter around the complex.  

A
resident of the apartment complex, Maribel Bravo-Juarez,  approached officers
and reported seeing appellant hiding in the bed of a pick-up truck.  She also
stated she had seen appellant enter apartment number 88.  S.W.A.T. and K-9
officers surrounded the apartment.  After a twenty- to thirty-minute stand-off,
appellant and another individual, Miguel Arango, surrendered to the officers. 
Officers searched apartment 88 and found property stolen from the pawn shop and
two firearms.  Officers also recovered clothing from the apartment matching the
clothing that Salazar, Delbosque, and Gana had described their assailants as
wearing during the robbery. 

Appellant
and Arango were taken into custody and placed in separate patrol cars.  HPD
officers transported appellant and Arango back to the pawnshop in the patrol
cars.  When he was shown the two suspects in the back of the vehicles, Salvador
was unable to identify either of them as having been involved in the robbery. 
Delbosque, on the other hand, positively identified appellant as one of the
robbers, but was unable to identify Arango.  Gana left the scene of the offense
before making an identification of either of the suspects.  HPD officer D.E.
Dexter and his partner transported appellant to the downtown police station for
processing.  During the trip to the station, appellant offered Dexter and his
partner $25,000 each to release him from custody.

Appellant
was indicted for aggravated robbery and bribery; these causes were consolidated
and tried in May 2008.  A jury convicted him of both offenses and sentenced him
to fifteen years= confinement in the Texas Department of Criminal Justice,
Institutional Division for the robbery.  The jury sentenced him to two years= confinement for the bribery
conviction, but recommended community supervision.  The trial court rendered
judgment on the jury=s verdict, and this appeal timely ensued.








II.  Issues Presented

In his
first issue, appellant asserts that the trial court erred by not suppressing a
witness=s in-court identification based on an
impermissibly suggestive pretrial identification procedure.  Appellant contends
in his second issue that the trial court prevented him from asking a proper
voir dire question about prejudices against people from Louisiana.  Finally, in
his third issue, appellant argues the trial court erroneously admitted an
in-custody statement that stemmed from his allegedly illegal arrest.  

III.  Analysis

Because
appellant=s first and third issues concern the trial court=s rulings on motions to suppress, we
address these issues first. 

A.        Motion to Suppress








We
review a trial court=s ruling on a motion to suppress A>in the light most favorable to the
trial court=s ruling.=@  Wiede v. State, 214 S.W.3d
17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006)).  Because the trial court observes the demeanor and
appearance of witnesses, it is the Asole trier of fact and judge of the
credibility of witnesses and the weight to be given to their testimony.@  State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000) (en banc).  When reviewing a trial court=s denial of a motion to suppress, we
afford almost total deference to the court=s express or implied determination of
historical facts, while reviewing the court=s application of the law to the facts
de novo.  Wiede, 214 S.W.3d at 25.  Where, as here, there are no written
findings in the record, we uphold the ruling on any theory of law applicable to
the case and assume the trial court made implicit findings of fact in support
of its ruling so long as those findings are supported by the record.  Ross,
32 S.W.3d at 855B56.  Finally, global statements in a motion to suppress
generally do not preserve error for appellate review absent more specific
grounds asserted at a hearing on the motion.  See Swain v. State, 181
S.W.3d 359, 365 (Tex. Crim. App. 2005).

1.         Identification

In his
first issue, appellant asserts that the trial court erred in admitting
identification evidence based on an impermissibly suggestive identification
procedure.  A[A] pretrial identification procedure may be so suggestive and conducive
to mistaken identification that subsequent use of that identification at trial
would deny the accused due process of law.@  Conner v. State, 67 S.W.3d
192, 200 (Tex. Crim. App. 2001).  Determining the admissibility of an in‑court
identification involves a two‑step analysis: (1) whether the pretrial
identification procedure was impermissibly suggestive, and, if so, (2) whether
that suggestive procedure gave rise to a substantial likelihood of an irreparable
in‑court misidentification.  Id.  An appellant must prove both of
these elements by clear and convincing evidence.  Santos v. State, 116
S.W.3d 447, 451 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (citing Delk v. State, 855
S.W.2d 700, 706 (Tex. Crim. App. 1993)).  In analyzing this issue, we must
consider the totality of the circumstances surrounding the identification.  Conner,
67 S.W.3d at 200.  But A[i]f the totality of the circumstances reveals no substantial
likelihood of misidentification despite a suggestive pretrial procedure,
subsequent identification testimony will be deemed >reliable,= reliability [being] the linchpin in
determining the admissibility of identification testimony.@  Ibarra v. State, 11 S.W.3d
189, 195 (Tex. Crim. App. 1999) (citations omitted, internal quotations
omitted). 








Considering
the first step of the analysis, a show-up identification[4]
is not necessarily impermissibly suggestive.  See Garza v. State, 633
S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh=g); see also In re G.A.T., 16
S.W.3d 818, 827 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  In fact, Aa one man show up without more does
not violate due process.@  Lewis v. State, 751 S.W.2d 895, 897 (Tex. App.CHouston [14th Dist.] 1988, no pet.). 
Although an Aon-the-scene confrontation has some degree of suggestiveness, in many
situations its use is necessary.@  Garza, 633 S.W.2d at 513. 
Such a show-up identification may provide the following benefits: (1) the witness
can test her recollection while her memory is fresh; (2) quick confirmation of
identification expedites the release of innocent suspects; and (3) if police
are able to release an innocent suspect, they may continue their search for the
perpetrator while Ahe is still within the area and before the criminal can
substantially alter his looks and dispose of evidence of the crime.@  Id.  

In this
case, officers arrived at the scene of a robbery-in-progress.  Officer Conner
saw appellant leaving the pawn shop and entering the grounds of a nearby
apartment complex.  Officers set up a perimeter around the apartment complex,
and based on information obtained from a witness, identified the specific
apartment in which appellant was hiding.  Officers surrounded this apartment
and demanded that those inside come out.  After the surrounding officers
threatened to send in a police dog, appellant and Arango surrendered to
police.  Conner then identified appellant as the individual he had seen leaving
the pawn shop and fleeing to the apartment complex.  Returning appellant to the
scene of the offense allowed the officers to quickly determine if he had been
involved in the armed robbery, so they could continue their search of the
immediate area, if necessary.  See id.  Such a quick identification was
particularly important here, as the perpetrators were both armed.  Further,
appellant and Arango had already attempted to alter their appearances by
changing their clothing.  See id.  Under these circumstances, we
conclude that the show-up was not unncecessarily suggestive.  Id.








But even
assuming the show-up identification was impermissibly suggestive, we conclude
there was no substantial likelihood of misidentification.  Factors we consider
when determining whether there is a substantial likelihood of misidentification
based on an impermissibly suggestive pretrial identification procedure include:
(a) the witness=s opportunity to view the perpetrator at the time of the
offense; (b) the witness=s degree of attention during the offense; (c) the accuracy of
the witness=s prior description of the perpetrator; (d) the witness=s level of certainty regarding her
identification at the time of confrontation; and (e) the lapse of time between
the offense and the subsequent confrontation.  See Santos, 116 S.W.3d at
453 (citing Ibarra, 11 S.W.3d at 195).  We consider these issues of
historical fact in the light most favorable to the trial court=s ruling, then weigh them de novo
against the Acorrupting effect@ of the suggestive pretrial identification procedure.   Id.
at 453B54 (citing Ibarra, 11 S.W.3d at 195B96).

Delbosque
testified that her assailant had covered part of his face with a bandana, but
she stated that she observed appellant=s physique and eyes and heard his
voice.[5]  She
explained that she had seen appellant=s face for 15 to 20 seconds and
emphasized she would never forget it.  Further, she described what appellant
was wearing; her description matched the clothing that Officer Connor saw
appellant wearing as he left the pawn shop and crossed the street in front of
his patrol car.  Moreover, Delbosque stated that she did not think the suspects
in the back of the patrol cars were necessarily involved in the robbery, even
though she knew that several of the items stolen from the pawn shop had been
recovered before she identified appellant.  She testified that it was a bad
neighborhood and that she believed officers Acould have pulled anybody over.@  Finally, according to Delbosque, Amaybe an hour or two@ elapsed between the robbery and her
identification of appellant.  








After
reviewing these facts in the light most favorable to the trial court=s ruling and weighing them de novo
against any Acorrupting effect@ from the pretrial identification procedure, we conclude that
the trial court did not err in admitting Delbosque=s in-court identification of
appellant.  We therefore overrule appellant=s first issue.

2.         Custodial Statements








In his
third issue,[6] appellant
complains that the trial court erroneously admitted his in-custody statements
because they arose from an allegedly illegal arrest.  In his written AMotion to Suppress,@ appellant generally argued that A[a]ny statements obtained from [him]
were obtained in violation of Article 38.22 of the Texas Code of Criminal
Procedure and in violation of [his rights] pursuant to the Fourth, Fifth,
Sixth, and Fourteenth Amendments to the United States Constitution, Article I,
Sections 9, 10 and 19 of the Constitution of the State of Texas.@  These arguments were global in
nature and consisted of nothing more than citations to constitutional and
statutory provisions.  See Swain, 181 S.W.3d at 365 (concluding that
similar global statements in motion to suppress did not preserve error in the
absence of more specific grounds asserted at hearing).  At the hearing on the
motion to suppress,[7] appellant did
not complain that the police arrested him without a warrant.  In fact,
appellant made no claim during either the hearing or his trial that he was
improperly arrested without a warrant.  Appellant=s global statements in his pretrial
motion to suppress are not sufficiently specific to preserve the arguments he
now makes on appeal.[8]  Id. 
We therefore overrule this issue.

B.        Voir Dire Question

In his
second issue, appellant argues that, during voir dire, the trial court
prevented him from asking a proper commitment question about prejudices against
people from Louisiana.  The state constitutional right to counsel includes the
right to pose proper questions during voir dire examination.  See Jones v.
State, 223 S.W.3d 379, 383 (Tex. Crim. App. 2007).  The trial court,
however, has broad discretion over the process of selecting a jury.  Barajas
v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (en banc). Thus, we will
not disturb the trial court=s ruling on the propriety of a particular question during
voir dire absent an abuse of discretion.  Id.

Commitment
questions are those that require a venire panel member to promise that she will
base her verdict or course of action on some specific set of facts before she
has heard any evidence.  Sanchez v. State, 165 S.W.3d 707, 712 (Tex.
Crim. App. 2005) (en banc).  Such questions are improper when: (1) no possible
answer to the question would give rise to a challenge for cause; or (2) the
question includes facts beyond those necessary to establish a challenge for
cause. Id.; see also Standefer v. State, 59 S.W.3d 177, 181B83 (Tex. Crim. App. 2001).








During
voir dire, appellant=s trial counsel asked, AHow many of you would hold it against
my client on punishment if you found out he came from [Louisiana], committed a
crime here?  Anybody on the first row would hold it against him in punishment,
give him more?@  The State objected Aas to punishment@ and the trial court sustained the
objection.  Undoubtedly this question asks for a commitment from the jury.  But
assuming without deciding that this question was proper, the record reflects
that appellant had ample opportunity to explore the panel members= feelings about people from Louisiana
in general, and Hurricane Katrina evacuees in particular. 

Appellant=s trial counsel introduced the
subject of Louisiana and posed the following questions, without objection, to
the voir dire panel: AHow do you feel about people from Louisiana?@ and AWhat are your general feelings?@  When a panel member mentioned
Hurricane Katrina and hurricane evacuees, appellant=s trial counsel questioned the panel
more specifically about any potential animus directed at people from Louisiana:
AIf during trial you were to find that
my client was from Louisiana, how many of you would hold that against him as
far as the guilt/innocence and punishment portion?@  The State objected to this
question, but the trial court overruled the objection.  Appellant=s trial counsel continued this line
of questioning as follows:

If you were
to find out that . . . someone was from Louisiana, let=s talk about punishment phase or guilt or innocence,
would that make you lean towards thinking he probably did it?  Would you hold
that against him?  Anybody . . .  think[] that might kind of put
you in the maybe a little guilty? [sic]

Every member of the panel
was given an opportunity to respond to this question.  It was only after this
line of questioning had been developed that the trial court sustained the State=s objection to the particular
question noted above.








The
record reflects that appellant had an opportunity to explore any possible
biases the jurors held against people from Louisiana or Hurricane Katrina
evacuees before the trial court prevented this particular question.[9] 
Thus, we cannot say that the trial court abused its discretion in preventing
this subsequent question about this topic during voir dire.[10] 
Accordingly, we overrule appellant=s second issue.  

IV.  Conclusion

Having
overruled appellant=s issues, we affirm the trial court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

Panel consists of Justices Yates,
Guzman, and Sullivan.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Trial Court Cause No. 1125773.





[2]  Trial Court Cause No. 1125774.





[3]  Appellant filed two briefs in this appeal, one for
each cause number.  But the third issue (which appellant erroneously identifies
as APoint of Error Four@)
in the first brief and the only issue in the second brief concern appellant=s complaint regarding the trial court=s ruling on the motion to suppress the statements he
made while in custody.  We discuss both of these issues together in this opinion,
and for ease of reference, describe them as appellant=s third issue.





[4]  A show-up identification is one in which a suspect
is confronted with a witness to or the victim of a crime in a one-on-one
situation rather than in a traditional line-up with multiple suspects.  See
Harris v. State, No. 14-06-01091-CR, 2007 WL 2682248, at *3 n.1 (Tex. App.CHouston [14th Dist.] Sept. 13, 2007, no pet.) (mem.
op., not designated for publication).





[5]  Voice identifications are not necessarily
unreliable.  Williams v. State, 850 S.W.2d 784, 786 (Tex. App.CHouston [14th Dist.] 1993), aff=d, 895
S.W.2d 363 (Tex. Crim. App. 1994).





[6]  As noted supra, appellant presents this issue
in both briefs he filed in this appeal.  The issues are worded identically, but
the harm analysis varies slightly in the briefs.  We need not address the
differences in the harm analysis, however, because, as we conclude below,
appellant failed to preserve this issue for our review.





[7]   Instead, he focused on questioning the officer
about the voluntariness of his statements.  His arguments to the trial court
were centered on the premise that his oral statements to the officers
concerning the bribery issue were tantamount to a confession of the aggravated
robbery and were not recorded as required by Texas law.  See Tex. Code Crim. Proc. Ann. art. 38.22 ' 3 (Vernon 2005).  He has abandoned these arguments on
appeal.





[8]  At trial, appellant sought and received a running
objection Ato go along with the testimony@ from the hearing on the motion to suppress.  The
trial court clarified that the running objection was limited to Athat specific issue@
and that Aany other objections@ would need to be made.  We note that appellant did object during trial
that he was in custody and had Ainvoked his
right to counsel,@ but this objection does not comport with his
complaint on appeal, either.  See, e.g., Guevara v. State, 97
S.W.3d 579, 583 (Tex. Crim. App. 2003) (holding that error was not preserved
when objection at trial did not comport with complaint raised on appeal).





[9]  We further note that appellant=s trial counsel went on to ask the panel members if
they could consider the full range of punishmentBi.e., probation to a life
sentenceBin an aggravated robbery case.





[10]  Cf. Wappler v. State, 183 S.W.3d 765,
773 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d) (noting that a trial court does not abuse its
discretion in restricting attempts to prolong voir dire through Airrelevant, immaterial, or unnecessarily repetitious@ questions); Davis v. State, 830 S.W.2d 206,
208 (Tex. App.CHouston [14th Dist.] 1992) (AThus, the trial court did not abuse its discretion in
restricting appellant=s voir dire by preventing appellant=s attempt to prolong voir dire with repetitious
questions.@), rev=d on other grounds, 872
S.W.2d 743 (Tex. Crim. App. 1994).