

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00495-CR

| | | |
|---|---|---|
| David Paul Sampson | § | From the 432nd District Court |
| | § | of Tarrant County (1186700D) |
| v. | § | January 4, 2013 |
| | § | Opinion by Justice Walker |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Sue Walker



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00495-CR

DAVID PAUL SAMPSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant David Paul Sampson appeals his conviction for two counts of aggravated robbery. In three issues, Sampson contends that the trial court erred by denying his motion to suppress evidence of the on-the-scene identification of him because the identification procedure used was unduly suggestive and

---

[1]See Tex. R. App. P. 47.4.

because he did not receive the statutory warnings against self-incrimination, and that the evidence is insufficient to support his conviction.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Brooklyn Baker and Ashley Darden, employees of a Family Dollar Store, closed the store one night and began walking to a bus stop.  Two men approached Darden and Baker, pointed guns at them, and directed them back to the store.  The tallest man wore a mechanic's jumpsuit; the other man was of medium height and wore a dark jacket with writing or a design on it and dark pants.  A third man, who also appeared to have a gun, joined them; he was the shortest of the three men and wore a dark hooded shirt or jacket and khaki pants.  All three men wore bandanas over their faces and hoods over their heads.  The men made Darden reopen the store, forced Baker to lie on the floor, and directed Darden to open the safes.

An offsite security monitoring service recorded the robbery and notified the police.  When the robbers heard police sirens, they ran out the back door of the store.  Fort Worth Police Officer Domingo Martinez arrived at the scene and was in front of the store when he heard a door slam and saw three people coming out of the store.  They started walking away, but when they made eye contact with Officer Martinez, they started running in the opposite direction.

Officer Marshall Meyer and Officer Gilbert Moreno saw three men running away from the Family Dollar when the officers arrived at the scene.  The three men reached a chain link fence; one of the men could not make it over and

3

stopped, but the other two climbed the fence and ran into a nearby field. Officer Meyer saw one of the men—who wore khaki pants and a dark top—make a "throwing motion" in the field, stop running, and put up his hands.

The police apprehended the three men—later identified as Sampson, Jesse Dancer, and Harold Vaughn—and took them back to the store. At the store, Darden told police that she could not recognize any of the three men as the robbers because she was not wearing her glasses during the robbery; however, she said that she was able to see the robbers' body types and clothing during the robbery and that the height and clothing of the three suspects matched that of the robbers. Baker and Darden both thought there were four robbers; they told police that they heard a man outside on a walkie-talkie communicating to the robbers inside the store about the status outside.[2] Baker identified Dancer (the tallest man who wore a mechanic's jumpsuit) and Vaughn (the medium-height man who wore a dark jacket with writing or a design on it) by sight, but she could not identify Sampson as one of the robbers. She asked police to have Sampson repeat a phrase that she had heard over the walkie-talkie during the robbery, and when he did, Baker identified Sampson's voice as

_____

[2]Darden testified that each time she heard the voice on the walkie-talkie, she saw only two men in the store and did not see the shortest robber wearing the khaki pants—Sampson.

4

the voice she heard on the walkie-talkie.[3]  Sampson was wearing khaki pants and a dark sweatshirt and was shorter than the other two men.

Officers found three nine millimeter handguns inside the Family Dollar store and in the field near where they had apprehended the men. Officers also found eight live rounds of nine millimeter bullets in Sampson's front right pocket; the bullets matched the caliber of the three guns officers found.  The robbers took about $866 from the store that night.  The police ultimately concluded that only three men were involved in the robbery.

At the punishment phase of Sampson's trial, he testified that the police had confused him with another individual by the name of Terrence Williams. Sampson testified that he and Terrence both have a similar stature and that they both wore khaki pants and a dark top on the night of the robbery because they were supposed to go to a pool tournament together.  Sampson testified that Terrence needed to get some items from his "baby mama's" house and had to sneak in because she would call the police if she found out he was there. Sampson testified that Terrence had asked him to hold Terrence's cell phone and to let him know if police were coming while he was inside the house. Sampson testified that he walked to the nearby Family Dollar to relieve himself behind the store and that while there, he saw three people flee from the back

---

[3]At trial, Baker did not recognize Sampson as the man that she identified by voice at the scene of the robbery.

door and run towards him. He instinctively ran because he saw that they had guns.

The jury assessed Sampson's punishment at fifteen years' confinement, and the trial court sentenced him accordingly.

### III. DENIAL OF MOTION TO SUPPRESS VOICE IDENTIFICATION WAS NOT ERROR

In his first and second issues, Sampson argues that the trial court erred by denying his motion to suppress evidence of Baker's voice identification of him because the pretrial identification procedure was unduly suggestive and because the warnings against self-incrimination required by Texas Code of Criminal Procedure article 38.22 were not given.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on

6

(1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

7

## B. Warnings against Self-Incrimination Were Not Required

Sampson argues that he was in custody and forced to "give a statement" without having first received the required statutory warnings under code of criminal procedure article 38.22 when the police made him repeat a phrase that the robbers had used so that Baker could determine whether his voice matched that of one of the robbers. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).

Article 38.22 provides that "[n]o oral . . . statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding" unless certain criteria are met. *Id.* art. 38.22, § 3. A voice exemplar seeks only physical evidence, not testimonial confessions of guilt. *Williams v. State*, 116 S.W.3d 788, 792 (Tex. Crim. App. 2003) ("'[The suspect] was required to use his voice as an identifying physical characteristic, not to speak his guilt.'") (quoting *United States v. Wade*, 388 U.S. 218, 222–23, 87 S. Ct. 1926, 1930 (1967)); *Jones v. State*, 795 S.W.2d 171, 175 (Tex. Crim. App. 1990). Compelling a suspect to speak within hearing distance of witnesses, even to speak the same words purportedly uttered by a robber, is not compulsion to utter statements of a testimonial nature when the suspect's voice is required as an identifying physical characteristic. *Williams*, 116 S.W.3d at 792.

Here, because the officers compelled Sampson to speak solely for the purpose of identifying one of his physical characteristics—his voice—and not for admitting the content of those statements, he was not entitled to first receive the

8

article 38.22 statutory warnings. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 38.22.

## C. The Pretrial Identification Procedure was not Impermissibly Suggestive

Sampson also argues that the voice identification procedure used to identify him at the scene was impermissibly suggestive.

A two-step analysis is used to determine the admissibility of an in-court identification: (1) whether the pretrial identification procedure was impermissibly suggestive, and (2) whether that suggestive pretrial identification procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1176 (1996). The analysis requires an examination of the totality of the circumstances surrounding the particular case and a determination of the reliability of the identification. *Barley*, 906 S.W.2d at 33. Reliability is the linchpin for determining whether identification testimony is admissible. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977); *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988), *cert. denied*, 491 U.S. 910 (1989); *see Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 828 (2000).

The defendant must show through clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley*, 906 S.W.2d at 33–34. Whether an identification procedure is impermissibly suggestive so as to create a substantial likelihood for misidentification is a mixed

question of law and fact that does not turn on an evaluation of credibility and demeanor. *Loserth v. State*, 963 S.W.2d 770, 772–73 (Tex. Crim. App. 1998).

Suggestive confrontations are not favored because they increase the likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 382 (1972). But although an "on the scene confrontation has some degree of suggestiveness, in many situations its use is necessary." *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g). This type of identification procedure may be beneficial because (1) it allows the witness to test his recollection while his memory is fresh; (2) a quick confirmation or denial of identification expedites the release of an innocent suspect; and (3) the release of an innocent suspect allows the police to continue their search for the perpetrator while he is still in the area and before he can change his appearance or dispose of evidence. *See id.* at 512.

Here, the officers quickly apprehended the three men they saw running from the store and brought them in front of Baker and Darden for identification within an hour of the armed robbery. Each suspect was handcuffed and placed in a separate police car. The officers told Baker and Darden that they had found three men who may or may not be involved and to "let them know" if they recognized them. The officers brought each suspect separately into the entrance area of the store in handcuffs so that Baker and Darden could attempt to identify them. When Baker could not identify Sampson by appearance, she asked that

10

he repeat a phrase she had heard over a walkie-talkie during the robbery. Sampson repeated the phrase in person, not over a walkie-talkie.

Although there was a degree of suggestiveness in this on-the-scene confrontation, that fact alone does not make it impermissibly suggestive. *See id.* ("While it must be conceded that an on-the-scene confrontation has some degree of suggestiveness, in many situations its use is necessary."). By presenting the three suspects to Baker and Darden—and by allowing Baker to hear Sampson's voice—shortly after the robbery, Baker and Darden were able to test their recollection while their memories were fresh and accurate. *See Williams v. State*, 850 S.W.2d 784, 787 (Tex. App.—Houston [14th Dist.] 1993), *aff'd*, 895 S.W.2d 363 (Tex. Crim. App. 1994). And having Sampson repeat a phrase used by one of the robbers and do so "live and in person," rather than over a walkie-talkie like Baker had originally heard it, does not add to the suggestiveness of the show-up. Under the circumstances, we cannot conclude that the identification procedure used to identify Sampson in the Family Dollar store robbery was impermissibly suggestive. *See Biggers*, 409 U.S. at 195, 93 S. Ct. at 380; *Davis v. State*, 180 S.W.3d 277, 283 (Tex. App.—Texarkana 2005, no pet.) (noting that the better practice would be to provide several voices in the identification procedure but holding that identification of defendant's voice on tape recording of him and a police officer talking was not impermissibly suggestive).

Even assuming that the identification procedure was impermissibly suggestive, we turn to the second step in our analysis—whether the suggestive

11

identification procedure gave rise to a substantial likelihood of misidentification. *See Simmons*, 390 U.S. at 384, 88 S. Ct. at 971; *Barley*, 906 S.W.2d at 33. We consider five non-exclusive factors in determining the reliability of the identification under the totality of the circumstances: (1) the witness's opportunity to view (and hear) the perpetrator at the time the crime is committed; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty that the witness demonstrated upon confrontation; and (5) the length of time between the crime and confrontation. *Biggers*, 409 U.S. at 199, 93 S. Ct. at 382; *Ibarra*, 11 S.W.3d at 195. The five *Biggers* factors are considered issues of historical fact and viewed deferentially in a light favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195. The factors are then weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 195–96.

The analysis of an identification of a voice differs from that of an identification by sight, but the standards used to validate a visual identification provide considerable guidance. *Davis*, 180 S.W.3d at 283; *see also Williams*, 116 S.W.3d at 792 ("'[W]hile one's voice and handwriting are, of course, means of communication,' a voice or handwriting exemplar 'is an identifying physical characteristic.'") (quoting *United States v. Dionisio*, 410 U.S. 1, 6–7, 93 S. Ct. 764, 768 (1973)).

Here, Baker was close to the three robbers during the robbery and had an opportunity to see and hear all three men. Although Sampson asserts on appeal

12

that "a voice over a radio and a voice in person sound different," Baker testified that the voice she heard over a walkie-talkie during the robbery was "[v]ery clear." She heard the man on the walkie-talkie first say that everything outside the store was "okay" and later say that he heard police sirens and that it was time to go. Baker testified that he kept telling the other men to "come on, come on." She paid close attention to the voice to try to remember what it sounded like. Approximately an hour after the robbery, the officers brought the three suspects before Baker for identification.[4] Although unable to identify Sampson by his appearance as one of the robbers, after Sampson repeated a phrase Baker had heard over the walkie-talkie, she was 100% certain that she had heard his voice inside the store during the robbery. The totality of the circumstances reveals no substantial likelihood of misidentification. *See Ibarra*, 11 S.W.3d at 195; *Loserth*, 963 S.W.2d at 772.

Even assuming that the identification procedure was impermissibly suggestive, when looking at the five *Biggers* factors in a light favorable to the trial court's ruling and weighing them de novo against the "corrupting effect" of the pretrial identification procedure, we cannot conclude that there was a substantial likelihood that Baker misidentified Sampson as one of the Family Dollar store robbers. *See Biggers*, 409 U.S. at 199, 93 S. Ct. at 34; *Ibarra*, 11 S.W.3d at 195.

---

[4]Baker believed that only about five minutes had elapsed between the robbery and when the officers brought the three men in front of her for identification. Thus, in Baker's mind, the sound of the robber's voice was fresh in her recollection.

13

**D. Even Assuming Error, Failure to Suppress Identification Evidence Was Harmless**

Even assuming that the trial court should have suppressed the voice identification evidence, and even assuming that the error rose to the level of a constitutional error, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Sampson's conviction or punishment. *See* Tex. R. App. P. 44.2(a).

Under rule 44.2(a), the question is whether the trial court's denial of Sampson's motion to suppress evidence of Baker's identification of him was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the harmless error test, our primary question is whether there is a reasonable possibility that any error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the

14

extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). These are not exclusive factors in any particular case; many other considerations may logically contribute to a proper harm analysis in a given case. *Id.* On the other hand, not every factor will necessarily apply to every conceivable constitutional error that may be the subject of an analysis for harm. *Id.* This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution. *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

Here, we assume error that rose to the level implicating Sampson's constitutional right to due process. *See Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S. Ct. 1967, 1972 (1967) (providing that a pretrial identification procedure may be so "unnecessarily suggestive and conducive to irreparable mistaken identification" that it constitutes a denial of due process of law). Nevertheless, our harm analysis must focus on the probable impact on the jury in light of the existence of other evidence presented at trial. *See Snowden*, 353 S.W.3d at 822. Other evidence demonstrated that officers saw three men running from the store after the robbery and that the officers apprehended the men—Sampson, Dancer, and Vaughn. A videotape of the robbery shows a man wearing the same clothing that Sampson was wearing—khaki pants and a dark top. In its

15

closing argument, the State mentioned Baker's identification of Sampson as one of the robbers, but the balance of the State's arguments went to the other evidence linking Sampson to the robbery. And although Baker's on-the-scene identification of Sampson by voice as one the robbers is compelling evidence against him, it is unlikely that the jury assigned to it more weight in the course of its deliberations—especially in light of the fact that Baker did not recognize Sampson at trial—than it did to the undisputed evidence that Sampson ran from the store when officers arrived and made a throwing motion in a nearby field where a gun was later recovered, that his clothing and appearance was similar to one of the men on the surveillance video of the robbery, and that he carried bullets that matched the caliber of three guns found at the scene.

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we hold beyond a reasonable doubt that any error did not contribute to Sampson's conviction or punishment. *See* Tex. R. App. P. 44.2(a).

Having held that Sampson was not entitled to statutory warnings before officers compelled him to repeat a phrase for voice identification and that the pretrial identification procedure was not impermissively suggestive, and having alternatively held that, even assuming error that rose to the level of a constitutional error, it was harmless, we overrule Sampson's first and second issues.

16

## IV. SUFFICIENCY OF THE EVIDENCE

In his third issue, Sampson argues that the evidence is insufficient to sustain his conviction because, had the voice identification been excluded at trial, the evidence showed only that he "was simply in the neighborhood and picked up by police as they arrested anyone in sight close to the Family Dollar Store."

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the

17

light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. In a sufficiency review, however, we consider all evidence, even improperly admitted evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

A person commits aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of property, that person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (West 2011).

In this case, we have already determined that the voice-identification evidence was properly admitted, but even assuming it should have been excluded, we may consider even improperly admitted evidence in our sufficiency review. *See Clayton*, 235 S.W.3d at 778; *Moff*, 131 S.W.3d at 489–90. In addition to Baker's on-the-scene identification of Sampson's voice as that of one of the robbers, the following evidence supports the jury's verdict. Officers saw three suspects running away from the Family Dollar, saw Vaughn stop before a fence, and then saw Sampson and Dancer scale the fence and run through a nearby field. Officer Meyer saw Sampson throw something, stop running, and put his hands up. The robbery was recorded on a security camera and showed

18

the suspects' clothing.  Sampson was wearing khaki pants and a dark top, like one of the robbers on the video.  Darden recognized the three suspects' body types and clothing as matching that of the robbers.  Furthermore, officers found eight live rounds of nine millimeter bullets in Sampson's front right pocket and found three nine millimeter handguns on the scene on the night of the robbery.

Although no walkie-talkie was found, although Darden and Baker could not positively identify Sampson by his appearance as one of the robbers, and although Baker did not recognize Sampson at trial as the robber that she identified by voice on the scene, we are to defer to the jury's fact determinations. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Oliver v. State*, 613 S.W.2d 270, 274 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g) (holding evidence of identity of thief may be proven by direct or circumstantial evidence); *Bickems v. State*, 708 S.W.2d 541, 543 (Tex. App.— Dallas 1986, no pet.) (holding evidence of victim's positive identification of defendant from photographic lineup and circumstantial evidence placing defendant in area and wearing clothes similar to those described was sufficient evidence despite uncertain in-court identification).  Viewing the evidence in the light most favorable to the prosecution, we hold that sufficient evidence exists to support the jury's verdict that Sampson committed aggravated robbery.  *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  We overrule Sampson's third issue.

19

## V. CONCLUSION

Having overruled Sampson's three issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 4, 2013