02-11-495-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00495-CR

 

 









 
 
 David
 Paul Sampson
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 432nd District
 Court
  
 of
 Tarrant County (1186700D)
  
 January
 4, 2013
  
 Opinion
 by Justice Walker
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Justice Sue Walker








 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00495-CR

 

 


 
 
 David Paul Sampson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
David Paul Sampson appeals his conviction for two counts of aggravated
robbery.  In three issues, Sampson contends that the trial court erred by
denying his motion to suppress evidence of the on-the-scene identification of
him because the identification procedure used was unduly suggestive and because
he did not receive the statutory warnings against self-incrimination, and that
the evidence is insufficient to support his conviction.  We will affirm. 

II.  Factual and Procedural Background

Brooklyn
Baker and Ashley Darden, employees of a Family Dollar Store, closed the store
one night and began walking to a bus stop.  Two men approached Darden and
Baker, pointed guns at them, and directed them back to the store.  The tallest
man wore a mechanic’s jumpsuit; the other man was of medium height and wore a
dark jacket with writing or a design on it and dark pants.  A third man, who
also appeared to have a gun, joined them; he was the shortest of the three men
and wore a dark hooded shirt or jacket and khaki pants.  All three men wore
bandanas over their faces and hoods over their heads.  The men made Darden
reopen the store, forced Baker to lie on the floor, and directed Darden to open
the safes.

An
offsite security monitoring service recorded the robbery and notified the
police.  When the robbers heard police sirens, they ran out the back door of
the store.  Fort Worth Police Officer Domingo Martinez arrived at the scene and
was in front of the store when he heard a door slam and saw three people coming
out of the store.  They started walking away, but when they made eye contact
with Officer Martinez, they started running in the opposite direction.

Officer
Marshall Meyer and Officer Gilbert Moreno saw three men running away from the
Family Dollar when the officers arrived at the scene.  The three men reached a
chain link fence; one of the men could not make it over and stopped, but the
other two climbed the fence and ran into a nearby field.  Officer
Meyer saw one of the men—who wore khaki pants and a dark top—make a “throwing
motion” in the field, stop running, and put up his hands.

The
police apprehended the three men—later identified as Sampson, Jesse Dancer, and
Harold Vaughn—and took them back to the store.  At the store, Darden told
police that she could not recognize any of the three men as the robbers because
she was not wearing her glasses during the robbery; however, she said that she
was able to see the robbers’ body types and clothing during the robbery and
that the height and clothing of the three suspects matched that of the
robbers.  Baker and Darden both thought there were four robbers; they told
police that they heard a man outside on a walkie-talkie communicating to the
robbers inside the store about the status outside.[2]  Baker
identified Dancer (the tallest man who wore a mechanic’s jumpsuit) and Vaughn (the
medium-height man who wore a dark jacket with writing or a design on it) by
sight, but she could not identify Sampson as one of the robbers.  She asked
police to have Sampson repeat a phrase that she had heard over the
walkie-talkie during the robbery, and when he did, Baker identified Sampson’s
voice as the voice she heard on the walkie-talkie.[3]  Sampson
was wearing khaki pants and a dark sweatshirt and was shorter than the other
two men.

Officers
found three nine millimeter handguns inside the Family Dollar store and in the
field near where they had apprehended the men. Officers also found eight live
rounds of nine millimeter bullets in Sampson’s front right pocket; the bullets
matched the caliber of the three guns officers found.  The robbers took about
$866 from the store that night.  The police ultimately concluded that only
three men were involved in the robbery.

          At
the punishment phase of Sampson’s trial, he testified that the police had confused
him with another individual by the name of Terrence Williams.  Sampson
testified that he and Terrence both have a similar stature and that they both wore
khaki pants and a dark top on the night of the robbery because they were
supposed to go to a pool tournament together.  Sampson testified that Terrence
needed to get some items from his “baby mama’s” house and had to sneak in
because she would call the police if she found out he was there.  Sampson
testified that Terrence had asked him to hold Terrence’s cell phone and to let
him know if police were coming while he was inside the house.  Sampson
testified that he walked to the nearby Family Dollar to relieve himself behind
the store and that while there, he saw three people flee from the back door and
run towards him.  He instinctively ran because he saw that they had guns.

The jury
assessed Sampson’s punishment at fifteen years’ confinement, and the trial
court sentenced him accordingly.

III.  Denial of Motion to Suppress Voice Identification Was Not Error

In
his first and second issues, Sampson argues that the trial court erred by
denying his motion to suppress evidence of Baker’s voice identification of him
because the pretrial identification procedure was unduly suggestive and because
the warnings against self-incrimination required by Texas Code of Criminal
Procedure article 38.22 were not given.

A.  Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez v.
State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Amador, 221 S.W.3d at 673; Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).      When the record is silent on the reasons for
the trial court’s ruling, or when there are no explicit fact findings and
neither party timely requested findings and conclusions from the trial court,
we imply the necessary fact findings that would support the trial court’s ruling
if the evidence, viewed in the light most favorable to the trial court’s
ruling, supports those findings.  State v. Garcia-Cantu, 253 S.W.3d 236,
241 (Tex. Crim. App. 2008); see Wiede, 214 S.W.3d at 25.  We then review
the trial court’s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

B. 
Warnings against Self-Incrimination Were Not Required

Sampson
argues that he was in custody and forced to “give a statement” without having
first received the required statutory warnings under code of criminal procedure
article 38.22 when the police made him repeat a phrase that the robbers had
used so that Baker could determine whether his voice matched that of one of the
robbers.  See Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).

Article
38.22 provides that “[n]o oral . . . statement of an accused made as a result
of custodial interrogation shall be admissible against the accused in a
criminal proceeding” unless certain criteria are met.  Id. art. 38.22, §
3.  A voice exemplar seeks only physical evidence, not testimonial confessions
of guilt.  Williams v. State, 116 S.W.3d 788, 792 (Tex. Crim. App. 2003)
(“‘[The suspect] was required to use his voice as an identifying physical
characteristic, not to speak his guilt.’”) (quoting United States v. Wade,
388 U.S. 218, 222–23, 87 S. Ct. 1926, 1930 (1967)); Jones v. State, 795
S.W.2d 171, 175 (Tex. Crim. App. 1990).  Compelling a suspect to speak within
hearing distance of witnesses, even to speak the same words purportedly uttered
by a robber, is not compulsion to utter statements of a testimonial nature when
the suspect’s voice is required as an identifying physical characteristic.  Williams,
116 S.W.3d at 792.

Here,
because the officers compelled Sampson to speak solely for the purpose of
identifying one of his physical characteristics—his voice—and not for admitting
the content of those statements, he was not entitled to first receive the
article 38.22 statutory warnings.  See id.; see also Tex. Code
Crim. Proc. Ann. art. 38.22.

C.  The
Pretrial Identification Procedure was not Impermissibly Suggestive

Sampson
also argues that the voice identification procedure used to identify him at the
scene was impermissibly suggestive. 

A
two-step analysis is used to determine the admissibility of an in-court
identification:  (1) whether the pretrial identification procedure was
impermissibly suggestive, and (2) whether that suggestive pretrial
identification procedure gave rise to a very substantial likelihood of
irreparable misidentification.  Simmons v. United States, 390 U.S. 377,
384, 88 S. Ct. 967, 971 (1968); Barley v. State, 906 S.W.2d 27, 33 (Tex.
Crim. App. 1995), cert. denied, 516 U.S. 1176 (1996).  The analysis
requires an examination of the totality of the circumstances surrounding the
particular case and a determination of the reliability of the identification.  Barley,
906 S.W.2d at 33. Reliability is the linchpin for determining whether
identification testimony is admissible.  Manson v. Brathwaite, 432 U.S.
98, 114, 97 S. Ct. 2243, 2253 (1977); Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988), cert. denied, 491 U.S. 910 (1989); see Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999), cert. denied,
531 U.S. 828 (2000). 

The
defendant must show through clear and convincing evidence that the pretrial
identification procedure was impermissibly suggestive.  Barley, 906
S.W.2d at 33–34.  Whether an identification procedure is impermissibly
suggestive so as to create a substantial likelihood for misidentification is a
mixed question of law and fact that does not turn on an evaluation of
credibility and demeanor.  Loserth v. State, 963 S.W.2d 770, 772–73
(Tex. Crim. App. 1998).

Suggestive
confrontations are not favored because they increase the likelihood of
misidentification.  Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375,
382 (1972).  But although an “on the scene confrontation has some degree of
suggestiveness, in many situations its use is necessary.”  Garza v. State,
633 S.W.2d 508, 512 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh’g).  This
type of identification procedure may be beneficial because (1) it allows the
witness to test his recollection while his memory is fresh; (2) a quick
confirmation or denial of identification expedites the release of an innocent
suspect; and (3) the release of an innocent suspect allows the police to
continue their search for the perpetrator while he is still in the area and
before he can change his appearance or dispose of evidence.  See id. at
512.

Here,
the officers quickly apprehended the three men they saw running from the store
and brought them in front of Baker and Darden for identification within an hour
of the armed robbery.  Each suspect was handcuffed and placed in a separate
police car.  The officers told Baker and Darden that they had found three men
who may or may not be involved and to “let them know” if they recognized them. 
The officers brought each suspect separately into the entrance area of the
store in handcuffs so that Baker and Darden could attempt to identify them.  When
Baker could not identify Sampson by appearance, she asked that he repeat a
phrase she had heard over a walkie-talkie during the robbery.  Sampson repeated
the phrase in person, not over a walkie-talkie.

Although
there was a degree of suggestiveness in this on-the-scene confrontation, that
fact alone does not make it impermissibly suggestive.  See id. (“While
it must be conceded that an on-the-scene confrontation has some degree of
suggestiveness, in many situations its use is necessary.”).  By presenting the
three suspects to Baker and Darden—and by allowing Baker to hear Sampson’s
voice—shortly after the robbery, Baker and Darden were able to test their
recollection while their memories were fresh and accurate.  See Williams
v. State, 850 S.W.2d 784, 787 (Tex. App.—Houston [14th Dist.] 1993), aff’d,
895 S.W.2d 363 (Tex. Crim. App. 1994).  And having Sampson repeat a phrase used
by one of the robbers and do so “live and in person,” rather than over a
walkie-talkie like Baker had originally heard it, does not add to the
suggestiveness of the show-up.  Under the circumstances, we cannot conclude
that the identification procedure used to identify Sampson in the Family Dollar
store robbery was impermissibly suggestive.  See Biggers, 409 U.S. at
195, 93 S. Ct. at 380; Davis v. State, 180 S.W.3d 277, 283 (Tex.
App.—Texarkana 2005, no pet.) (noting that the better practice would be to
provide several voices in the identification procedure but holding that
identification of defendant’s voice on tape recording of him and a police
officer talking was not impermissibly suggestive).

Even
assuming that the identification procedure was impermissibly suggestive, we
turn to the second step in our analysis—whether the suggestive identification
procedure gave rise to a substantial likelihood of misidentification.  See
Simmons, 390 U.S. at 384, 88 S. Ct. at 971; Barley, 906 S.W.2d at
33.  We consider five non-exclusive factors in determining the reliability of
the identification under the totality of the circumstances:  (1) the witness’s
opportunity to view (and hear) the perpetrator at the time the crime is
committed; (2) the witness’s degree of attention; (3) the accuracy of the
witness’s prior description of the criminal; (4) the level of certainty that
the witness demonstrated upon confrontation; and (5) the length of time between
the crime and confrontation.  Biggers, 409 U.S. at 199, 93 S. Ct. at 382;
Ibarra, 11 S.W.3d at 195.  The five Biggers factors are considered
issues of historical fact and viewed deferentially in a light favorable to the
trial court’s ruling.  Ibarra, 11 S.W.3d at 195.  The factors are then
weighed de novo against “the corrupting effect” of the suggestive pretrial
identification procedure.  Id. at 195–96.

The
analysis of an identification of a voice differs from that of an identification
by sight, but the standards used to validate a visual identification provide
considerable guidance.  Davis, 180 S.W.3d at 283; see also Williams,
116 S.W.3d at 792 (“‘[W]hile one’s voice and handwriting are, of course, means
of communication,’ a voice or handwriting exemplar ‘is an identifying physical
characteristic.’”) (quoting United States v. Dionisio, 410 U.S. 1, 6–7,
93 S. Ct. 764, 768 (1973)).

Here,
Baker was close to the three robbers during the robbery and had an opportunity
to see and hear all three men.  Although Sampson asserts on appeal that “a
voice over a radio and a voice in person sound different,” Baker testified that
the voice she heard over a walkie-talkie during the robbery was “[v]ery clear.”
 She heard the man on the walkie-talkie first say that everything outside the
store was “okay” and later say that he heard police sirens and that it was time
to go.  Baker testified that he kept telling the other men to “come on, come
on.”  She paid close attention to the voice to try to remember what it sounded
like.  Approximately an hour after the robbery, the officers brought the three
suspects before Baker for identification.[4] 
Although unable to identify Sampson by his appearance as one of the robbers,
after Sampson repeated a phrase Baker had heard over the walkie-talkie, she was
100% certain that she had heard his voice inside the store during the robbery.  The
totality of the circumstances reveals no substantial likelihood of
misidentification.  See Ibarra, 11 S.W.3d at 195; Loserth, 963
S.W.2d at 772.

Even
assuming that the identification procedure was impermissibly suggestive, when
looking at the five Biggers factors in a light favorable to the trial
court’s ruling and weighing them de novo against the “corrupting effect” of the
pretrial identification procedure, we cannot conclude that there was a
substantial likelihood that Baker misidentified Sampson as one of the Family
Dollar store robbers.  See Biggers, 409 U.S. at 199, 93 S.
Ct. at 34; Ibarra, 11 S.W.3d at 195.

D.  Even Assuming
Error, Failure to Suppress Identification Evidence Was Harmless

Even
assuming that the trial court should have suppressed the voice identification
evidence, and even assuming that the error rose to the level of a
constitutional error, we apply rule 44.2(a) and reverse unless we determine
beyond a reasonable doubt that the error did not contribute to Sampson’s
conviction or punishment.  See Tex. R. App. P. 44.2(a).

Under
rule 44.2(a), the question is whether the trial court=s denial
of Sampson’s motion to suppress evidence of Baker’s identification of him was
harmless beyond a reasonable doubt.  See Williams v. State, 958 S.W.2d
186, 194 (Tex. Crim. App. 1997).  In applying the harmless error test, our
primary question is whether there is a reasonable possibility that any error
might have contributed to the conviction.  Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert.
denied, 526 U.S. 1070 (1999).

Our
harmless error analysis should not focus on the propriety of the outcome of the
trial; instead, we should calculate as much as possible the probable impact on
the jury in light of the existence of other evidence.  Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).  We “should take into account any and every circumstance apparent in
the record that logically informs an appellate determination whether ‘beyond a
reasonable doubt [that particular] error did not contribute to the conviction
or punishment,’” and if applicable, we may consider the nature of the error,
the extent that it was emphasized by the State, its probable collateral
implications, and the weight a juror would probably place on the error.  Snowden
v. State, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App.
P. 44.2(a)).  These are not exclusive factors in any particular case; many
other considerations may logically contribute to a proper harm analysis in a
given case.  Id.  On the other hand, not every factor will necessarily
apply to every conceivable constitutional error that may be the subject of an
analysis for harm.  Id.  This requires us to evaluate the entire record
in a neutral, impartial, and even-handed manner, not Ain
the light most favorable to the prosecution.  Harris v. State, 790
S.W.2d 568, 586 (Tex. Crim. App. 1989), disagreed with in part on other
grounds by Snowden, 353 S.W.3d at 821–22.

Here,
we assume error that rose to the level implicating Sampson’s constitutional
right to due process.  See Stovall v. Denno, 388 U.S. 293,
301–02, 87 S. Ct. 1967, 1972 (1967) (providing that a pretrial identification
procedure may be so “unnecessarily suggestive and conducive to irreparable
mistaken identification” that it constitutes a denial of due process of law).  Nevertheless,
our harm analysis must focus on the probable impact on the jury in light of the
existence of other evidence presented at trial.  See Snowden, 353
S.W.3d at 822.  Other evidence demonstrated that officers saw three men running
from the store after the robbery and that the officers apprehended the
men—Sampson, Dancer, and Vaughn.  A videotape of the robbery shows a man
wearing the same clothing that Sampson was wearing—khaki pants and a dark top. 
In
its closing argument, the State mentioned Baker’s identification of Sampson as
one of the robbers, but the balance of the State’s arguments went to the other
evidence linking Sampson to the robbery.  And although Baker’s on-the-scene
identification of Sampson by voice as one the robbers is compelling evidence
against him, it is unlikely that the jury assigned to it more weight in the
course of its deliberations—especially in light of the fact that Baker did not
recognize Sampson at trial—than it did to the undisputed evidence that Sampson ran
from the store when officers arrived and made a throwing motion in a nearby
field where a gun was later recovered, that his clothing and appearance was
similar to one of the men on the surveillance video of the robbery, and that he
carried bullets that matched the caliber of three guns found at the scene.

After
carefully reviewing the record and performing the required harm analysis under
rule 44.2(a), we hold beyond a reasonable doubt that any error did not contribute
to Sampson’s conviction or punishment.  See Tex. R. App. P. 44.2(a).

Having
held that Sampson was not entitled to statutory warnings before officers
compelled him to repeat a phrase for voice identification and that the pretrial
identification procedure was not impermissively suggestive, and having
alternatively held that, even assuming error that rose to the level of a
constitutional error, it was harmless, we overrule Sampson’s first and second
issues.

IV.  Sufficiency of the Evidence

In
his third issue, Sampson argues that the evidence is insufficient to sustain
his conviction because, had the voice identification been excluded at trial,
the evidence showed only that he “was simply in the neighborhood and picked up
by police as they arrested anyone in sight close to the Family Dollar Store.”

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Blackman v. State, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Wise, 364
S.W.3d at 903.  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Isassi v. State, 330 S.W.3d 633,
638 (Tex. Crim. App. 2010).  Instead, we determine whether the necessary
inferences are reasonable based upon the cumulative force of the evidence when
viewed in the light most favorable to the verdict.  Sorrells v. State,
343 S.W.3d 152, 155 (Tex. Crim. App. 2011).  We must presume that the
factfinder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Wise, 364 S.W.3d at 903. In a sufficiency review, however, we
consider all evidence, even improperly admitted evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007); Moff v. State, 131 S.W.3d
485, 489–90 (Tex. Crim. App. 2004).

A
person commits aggravated robbery if, in the course of committing theft and
with intent to obtain or maintain control of property, that person
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death and uses or exhibits a deadly weapon.  See Tex.
Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (West 2011).

In
this case, we have already determined that the voice-identification evidence
was properly admitted, but even assuming it should have been excluded, we may
consider even improperly admitted evidence in our sufficiency review.  See
Clayton, 235 S.W.3d at 778; Moff, 131 S.W.3d at 489–90.  In
addition to Baker’s on-the-scene identification of Sampson’s voice as that of
one of the robbers, the following evidence supports the jury’s verdict.  Officers
saw three suspects running away from the Family Dollar, saw Vaughn stop before
a fence, and then saw Sampson and Dancer scale the fence and run through a
nearby field.  Officer Meyer saw Sampson throw something, stop running, and put
his hands up.  The robbery was recorded on a security camera and showed the
suspects’ clothing.  Sampson was wearing khaki pants and a dark top, like one
of the robbers on the video.  Darden recognized the three suspects’ body types
and clothing as matching that of the robbers.  Furthermore, officers found
eight live rounds of nine millimeter bullets in Sampson’s front right pocket and
found three nine millimeter handguns on the scene on the night of the robbery.

Although
no walkie-talkie was found, although Darden and Baker could not positively
identify Sampson by his appearance as one of the robbers, and although Baker
did not recognize Sampson at trial as the robber that she identified by voice
on the scene, we are to defer to the jury’s fact determinations.  See Brooks
v. State, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); see also Oliver v.
State, 613 S.W.2d 270, 274 (Tex. Crim. App. [Panel Op.] 1981) (op. on
reh’g) (holding evidence of identity of thief may be proven by direct or
circumstantial evidence); Bickems v. State, 708 S.W.2d 541, 543
(Tex. App.—Dallas 1986, no pet.) (holding evidence of victim’s positive
identification of defendant from photographic lineup and circumstantial
evidence placing defendant in area and wearing clothes similar to those
described was sufficient evidence despite uncertain in-court identification).  Viewing
the evidence in the light most favorable to the prosecution, we hold that
sufficient evidence exists to support the jury’s verdict that Sampson committed
aggravated robbery.  See Tex. Penal Code Ann. §§ 29.02(a)(2),
29.03(a)(2); Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  We overrule Sampson’s third issue.

V.  Conclusion

Having
overruled Sampson’s three issues, we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and GABRIEL, JJ. 

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 4, 2013









[1]See Tex. R. App. P. 47.4.





[2]Darden testified that each time she heard the voice on the
walkie-talkie, she saw only two men in the store and did not see the shortest
robber wearing the khaki pants—Sampson.





[3]At trial, Baker did not recognize Sampson as the man that she
identified by voice at the scene of the robbery.





[4]Baker believed that only about five minutes had elapsed between the
robbery and when the officers brought the three men in front of her for
identification.  Thus, in Baker’s mind, the sound of the robber’s voice was
fresh in her recollection.